In the Matter of Hymen **FREEDMAN**,
Hymen Freedman Kosher Meats
and Poultry, Bankrupt.

No. 40044.

United States District Court
E. D. Michigan, S. D.

Nov. 28, 1958.

———◆———

Goldman, Grabow & Katcher, Detroit,
Mich., David W. Laughery, Detroit,

Mich., for Associates Discount Corp., petitioner for review.

Herbert N. Weingarten, Steven I. Victor, Detroit, Mich., for trustee.

FREEMAN, District Judge.

This proceeding is an appeal from an order of the referee in bankruptcy declaring null and void a lien of Associates Discount Corporation on a Chevrolet truck owned by the bankrupt.

The facts of the case are undisputed. Hymen Freedman filed a voluntary petition in bankruptcy on January 2, 1958, and was adjudicated a bankrupt on that day. On June 26, 1957, the bankrupt had purchased a Chevrolet truck and executed a chattel mortgage thereon to the assignor of Associates Discount. This chattel mortgage was recorded in the office of the Wayne County Register of Deeds on July 5, 1957, nine days after execution. The bankrupt appears to have had possession of the truck from the purchase date until Associates Discount repossessed it, either shortly before, or shortly after, the date of bankruptcy.

After January 2, 1958, the receiver (now trustee) petitioned the referee for an order to Associates Discount to show cause why its lien should not be declared null and void under Sec. 70, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c. At a hearing on the order to show cause, Associates Discount raised as a defense Act 153, Mich.Public Acts 1956, C.L.Supp.1956, Sec. 566.140, Sec. 26.929, M.S.A. The parties filed briefs and the referee then rendered the opinion and order from which the instant appeal is taken, declaring Associates Discount's lien null and void.

This appeal is taken to review the decision of the referee on the issue of the application of Sec. 70, sub. c, of the Bankruptcy Act to the facts of this case and on the issue of whether Act 153 of the 1956 Public Acts of Michigan may be used as a defense to the trustee's attempt to avoid Associates Discount's lien.

Sec. 70, sub. c, provides, in pertinent part:

" * * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

Act 153 provides, in pertinent part:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed in the office of the register of deeds of the county where the goods or chattels are located, and also where the mortgagor resides, except when the mortgagor is a non-resident of the state, when the mortgage or a true copy thereof shall be filed in the office of the register of deeds of the county in which the property is located: Provided, however, That any such mortgage shall not be void in the case of insolvency proceedings as against the creditors of the mortgagor if filed within 14 days from the date thereof; * * *."

In the proceedings before the referee, and in the oral arguments and briefs filed before this court, the trustee argues that Sec. 70, sub. c, gives him the power to avoid this lien, since a trustee is clothed with all the powers of "a perfect hypothetical lien creditor," cf. Constance v. Harvey, 2 Cir., 1954, 215 F.2d 571,

certiorari denied 348 U.S. 913, 75 S.Ct. 294, 99 L.Ed. 716, and, therefore, has all the rights of a pre-existing creditor who did extend credit during the nine days this chattel mortgage was not of record. Hence, the trustee contends that the mortgage is void as to interim creditors since it was not immediately recorded as required by Michigan law. Associates Discount argues that Act 153 is applicable to this proceeding and gives the lienor fourteen days to record before any interim creditor may avoid a lien in insolvency proceedings. In reply, the trustee contends that Act 153 is in conflict with Sec. 70, sub. c, Bankruptcy Act, and thus is not applicable to bankruptcy proceedings.

In his opinion, the referee held that Sec. 70, sub. c, gave the trustee the power to avoid the lien held by Associates Discount, on the authority of Constance v. Harvey, supra. He then held that Act 153 was in conflict with the Bankruptcy Act, since Sec. 70, sub. c, gave the trustee all the powers of the most perfect possible hypothetical creditor under state law, and the state could not withdraw from the trustee in bankruptcy, powers granted creditors under state law by the technique employed in that Act. He reasoned that there was no point in time when Act 153 could operate to strip the trustee of these powers; and, if the Michigan legislature intended the Act to apply to bankruptcy proceedings, as it did, cf. In re Perry, D.C.W.D.Mich.S.D.1958, 157 F.Supp. 910, then it must be in conflict with the Bankruptcy Act. For these reasons, the referee declared Associates Discount's lien null and void.

Prior to the enactment of Act 153, Michigan law required immediate recording of chattel mortgages; and, if a chattel mortgage were not recorded "immediately," it would be void as to any general creditors extending credit between the date of execution and the ultimate date of recordation. Ransom & Randolph Co. v. Moore, 1935, 272 Mich. 31, 261 N.W. 128; O'Neil v. Brooks, 1914, 180 Mich. 540, 147 N.W. 537; Fearey v. Cummings, 1879, 41 Mich.

376, 1 N.W. 946. Act 153 leaves the previous immediate recording requirement in full force and effect, except in the case of insolvency proceedings. However, the amending proviso of Act 153 clearly dictates that, if a lien is attacked by an interim creditor in state insolvency proceedings, the lien may not be avoided by any creditor if it were recorded within fourteen days from the date of execution.

Since the term "insolvency proceedings" has been correctly held to include, within its meaning, federal bankruptcy proceedings, In re Perry, supra, it is clear to the court that Act 153 would validate this lien and insulate it from attack by any actual interim creditor in this proceeding, unless it is in conflict with the Bankruptcy Act.

In Constance v. Harvey, supra, the court considered a case where a chattel mortgage had not been recorded within a reasonable time, but had been recorded prior to the date of bankruptcy. Under New York law, a general creditor who extended credit, during the time a mortgage was thus "off record," could avoid the effect of the mortgage even though it was subsequently recorded before the creditor obtained an actual lien. Even though there was no proof of the existence of any actual interim creditor, the court held that the trustee had all the powers of a "perfect hypothetical lien creditor" and, therefore, had the powers of a general interim creditor who had extended credit prior to the date of bankruptcy, and could thus avoid the chattel mortgagor's lien. This decision was based on the powers extended the trustee by Sec. 70, sub. c. Applied to the facts at bar, this rule would allow the trustee to avoid Associates Discount's lien, but for the effect of Act 153.

Associates Discount has asked this court to refuse to apply the decision in Constance v. Harvey, supra, or to hold that Act 153 is not in conflict with the Bankruptcy Act. It is apparent that, if this court were to hold that Act 153 is in conflict with the Bankruptcy Act, it

would then be necessary for the court to rule on the application of the rule in Constance v. Harvey. It is also apparent that the only way the court can reach the issue of whether Act 153 is in conflict with the Bankruptcy Act is to assume that the trustee has the power to avoid this lien if the fourteen day recording proviso is not applicable. In this case, such a power could be found only by applying the rule in Constance v. Harvey. However, if the court should rule that Act 153 is not in conflict with the Bankruptcy Act, any decision on the applicability of Constance v. Harvey would then become moot. Therefore, in its discussion of the issue involving Act 153, the court assumes, but does not decide, that the decision in Constance v. Harvey constitutes good law and gives the trustee the authority to avoid this lien if the fourteen day proviso in Act 153 is not operative.

In the opinion of this court, the referee was in error in holding that Act 153 is in conflict with the Bankruptcy Act.

■ It is well established that the powers of the trustee in bankruptcy are derived solely from the laws passed by Congress and that these laws will be held superior to any conflicting state laws. Const. Art. I, § 8, Clause 4; Const. Art. VI, par. 2; International Shoe Co. v. Pinkus, 1929, 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318. In the case at bar, it is asserted that Congress has given the trustee the power to avoid this lien in Sec. 70, sub. c, Bankruptcy Act. In that section, Congress has given the trustee all "the rights, remedies and powers" of a creditor holding a lien on property of the bankrupt, as of the date of bankruptcy, whether or not such a creditor actually exists. Constance v. Harvey, supra, holds that this section extends to the trustee the rights of a creditor under state law who extended credit prior to the date of bankruptcy, and, thus, he has the right to a superior lien on the property as of the date of bankruptcy, because of that prior extension of credit. Sec. 70, sub. c, grants to the trustee all the powers of the most perfect class of creditors who could exist, whether or not they actually exist. That section does not attempt to define or limit this class of creditors. This determination is left entirely to state law. Matter of Floyd-Scott Co., D.C.Mass.1915, 224 F. 987, affirmed 1 Cir., 228 F. 506; In re Wright Industries, Inc., D.C.E.D.Ohio 1950, 93 F.Supp. 58. Thus, Congress has left the precise definition of the limits of the trustee's powers to be ascertained from the rights accruing to creditors under state law.

■■ In Michigan, a general creditor who extends credit during the period after a chattel mortgage is executed but before it is recorded as required by the statutory "immediate" recording requirement, may avoid entirely the lien of such a chattel mortgage, and may gain a superior lien by legal process subsequent to the recording of such a mortgage. Ransom & Randolph Co. v. Moore, supra; O'Neil v. Brooks, supra; Fearey v. Cummings, supra. Thus, immediately prior to the filing of the petition in bankruptcy in this proceeding, a general interim creditor could have avoided the lien of Associates Discount, since this mortgage was not recorded "immediately". However, Act 153 provides that, in the case of any insolvency proceeding, a mortgage may not be avoided unless it was not filed within fourteen days of execution. This provision has been held to apply to federal bankruptcy proceedings. In re Perry, supra.

■■ The referee held that Act 153 is in conflict with Sec. 70, sub. c. In his opinion, he stated that Sec. 70, sub. c, gave the trustee all the powers of a creditor under state law. He then reasoned that the powers of an hypothetical creditor ended and the powers of a trustee in bankruptcy began simultaneously, and that there was no point in time during which Act 153 could intervene and strip the trustee of his powers, as determined by his status as a creditor, under state law. He cited as authority for this proposition Lockhart v. Garden City Bank & Trust Co., 2 Cir., 1941, 116 F. 2d 658. This case stands for the rule that the powers of the trustee and the rights and remedies of creditors are de-

termined as of the date of bankruptcy and remain fixed thereafter, regardless of state law. Applying this rule, the court held that a creditor's lien, good against the trustee at the date of bankruptcy, was not rendered invalid by the creditor's failure to refile the mortgage from which his lien was derived, within one year as required by state law to maintain a valid lien. The court said that the Bankruptcy Act determines what rights conferred on creditors by state law are transferred to the trustee. It held that only those rights available to creditors as of the date of bankruptcy are transferred to the trustee by Sec. 70, sub. c. Applying the Lockhart case to the facts of the case at bar leads only to the conclusion that this court must look at the rights of state creditors as of the date of bankruptcy, and not thereafter, to determine the powers of the trustee.

The reasoning of the referee is ingenious; however, it does not seem to this court to be correct. The problem here is one of ascertaining the intent of Congress in promulgating Sec. 70, sub. c. As stated above, the cases have uniformly held that the powers of the trustee as an hypothetical creditor are to be determined by reference to state law. Matter of Floyd-Scott Co., supra; In re Wright Industries, supra. From these cases, the court must conclude that Congress intended that the powers it granted to the trustee under Sec. 70, sub. c, be determined by reference to state law and did not intend any limitation on the extent to which state law might curtail these powers. If this court were to affirm the order of the referee, it would necessarily be holding, as the referee necessarily held, that Congress did not intend to allow a state to pass legislation affecting the rights of lien holders in insolvency proceedings, insofar as such legislation may affect the trustee's powers under Sec. 70, sub. c, in federal bankruptcy proceedings. It seems to the court that such a holding imputes too much to the intent of Congress, and would be a departure from the line of cases holding that Congress intended

only to grant to the trustee the rights and remedies of creditors as of the date of bankruptcy as determined by reference to the law of the appropriate state. As previously explained, Act 153 dictates that general interim creditors may not avoid, in insolvency proceedings, a chattel mortgage filed within fourteen days of its date of execution, as was the mortgage in this case. This Act does not strip the trustee of any powers, as the referee stated. The trustee never acquired the power to invalidate the lien of Associates Discount. Under Act 153, applicable state law in this case, a lien creditor has fourteen days to record his lien if the debtor becomes insolvent. An interim creditor acquires rights subject to such contingency, which, of course, is a continuous limitation on the interim creditor's rights. The fourteen day recording period takes effect as of the date of bankruptcy, and not thereafter. Concededly, it does not have any actual effect prior to the date of bankruptcy, but neither are the trustee's powers determined prior to that date. It would be appropriate to observe that Act 153 affects not only the rights of the trustee in bankruptcy, but also is operative on the rights of all interim creditors in Michigan who seek to avoid a lien during the course of any kind of state insolvency proceedings. Therefore, it cannot be said that Act 153 is solely directed at the trustee in bankruptcy, as the trustee in this proceeding contends. It affects the rights of creditors and, in so doing, it has an incidental effect on the powers of the trustee. Sec. 70, sub. c, clearly expresses the intent of Congress that the trustee have no more rights or remedies than a creditor who could have obtained a lien superior to Associates Discount's as of the date of bankruptcy and, therefore, the trustee cannot do so.

For the above reasons, the court determines that Act 153 does not conflict with Sec. 70, sub. c, of the Bankruptcy Act.

The referee's opinion and order are in error and must be vacated. An appropriate order may be presented.